HAWKES, J.
 

 This appeal concerns whether the Unemployment Appeals Commission (UAC) acted properly in finding claimant Stacey C. Craven was not entitled to unemployment benefits. In the order on appeal, the UAC upheld an appeals referee’s finding that Craven was sexually harassed during the course of her employment. The UAC went on to agree with the referee that despite such harassment, Craven was still not entitled to benefits because she left without giving her employer a reasonable opportunity to address the problem.
 

 While the UAC may be correct in finding Craven’s employer did not have sufficient time to address the harassment, its scant fact findings — some of which are completely without record support — make it impossible for us to verify that this was the correct result. Therefore, we reverse and remand for further fact findings, as described below.
 

 Facts
 

 Craven was employed as a morning meteorologist for WJHG-TV, a station owned by Gray Television Group (the employer). During the course of her employment, Craven was sexually harassed and, eventually, quit on September 23, 2009, approximately two weeks before her contract was set to expire. She then applied for unemployment benefits, citing the prolonged sexual harassment and the hostile work environment it created. An Agency for Workforce Innovation adjudicator granted her request, finding she had “good cause” to leave due to the poor working conditions allowed by the employer. However, the employer appealed the determination and a formal hearing was held.
 

 During the hearing, Craven testified to the following chronology of events:
 

 • June 2008 — Craven initially reports the harassment to Curt Molander — the station’s general manager — although she refuses to identify her harasser. Molander, who also testified at the hearing, confirmed that he spoke with Craven regarding the harassment at this time.
 
 [1]
 

 
 *652
 
 • September 2008 — Craven speaks about the harassment with Tom Lewis — the station’s news director — and identifies her harasser by name. She also shows Lewis a lewd picture the harasser had sent her of his genitals. Craven testified Lewis instructed her not to tell anyone of the harassment.
 

 • September 2008 — September 2009— The employer takes no action on the allegations
 
 of
 
 harassment.
 

 • September 17, 2009 — Craven files a formal complaint with the station.
 

 • September 23, 2009 — Craven quits one day after the station initiates an investigation into her complaint. Craven, who was pregnant at the time, testified the stress of the situation had caused her to begin leaking amniotic fluid, prompting her decision to quit.
 

 • October 27, 2009 — The employer extends an unconditional offer to have Craven return to employment as a meteorologist. Craven does not accept the offer, fearing that returning to work for the employer might cause stress which would complicate her pregnancy.
 

 Following the hearing, the appeals referee issued an order reversing the adjudicator’s initial determination which found Craven qualified for unemployment benefits. In its order, the referee found Craven was harassed, that she reported the harassment to Molander in July 2008, and that she refused to identify the harasser at that time. Oddly, the order does not mention Craven’s conversation with Lewis in September 2008, in which she claimed to have identified the harasser. Instead, it states she “ultimately divulged the identity of her harasser in August 2009, and the employer then began an investigation [although Craven left] before the investigation was completed.” Nor does the order mention the offer of re-employment or Craven’s reasons for refusing it.
 

 Based on these findings, the referee concluded Craven was not entitled to unemployment benefits. He stated that to receive benefits after voluntarily leaving employment, Craven had to show by a preponderance of the evidence that her decision to quit was for “good cause” attributable to the employer. The referee explained that when sexual harassment is alleged as a reason for leaving employment, an employee can only demonstrate “good cause” by showing: (1) that the harassment occurred; and (2) that the employer was given reasonable opportunity to address the problem. The referee stated Craven did not satisfy the second prong because she initially refused to identify her harasser and, once an investigation was initiated, left employment prior to its completion. The referee concluded that because Craven did not give the employer a reasonable opportunity to address her claims, she did not have “good cause” to leave employment and, therefore, was ineligible for benefits.
 

 Craven appealed the referee’s denial to the UAC, which affirmed the decision without further discussion of the facts or law. This appeal followed.
 

 Standard of Review
 

 On appeal, we give a decision by the UAC a presumption of correctness.
 
 [2]
 
 We review the fact findings to ensure they are supported by competent, substantial evidence, and the legal conclusions to ensure
 
 *653
 
 they are not clearly erroneous.
 
 [3]
 
 In the instant case, we need not even consider the UAC’s legal conclusions. Its fact findings alone require reversal for two reasons: (1) several findings are not supported by competent, substantial evidence; and (2) the findings do not address crucial portions of hearing testimony pertaining to whether Craven gave the employer a reasonable opportunity to address the harassment.
 

 Competent, substantial evidence does not support the fact finding that Craven identified her harasser in August 2009
 

 In its order, the UAC upheld the referee’s fact finding that Craven revealed the harasser’s identity in August 2009. There is no evidence in the record to support this finding. Indeed, Craven’s uncontested testimony was that she told Lewis — the news director — of the harasser’s identity in September 2008. This inaccuracy affects other fact findings made by the referee, such as his finding that the employer began a prompt investigation after the harasser was identified. Assuming the harasser was identified in September 2008, the investigation — which began in September 2009 — was delayed and hardly prompt.
 

 On remand, the UAC should correct this erroneous fact finding, and assess what effect, if any, it has upon other portions of the decision.
 

 Further fact finding is required to determine if the employer had reasonable opportunity to address the harassment
 

 The referee’s decision — upheld by the UAC — hinged upon his finding that Craven did not give the employer a reasonable opportunity to investigate the allegations of harassment before quitting. This may indeed be true. However, the referee arrived at this conclusion with apparent disregard for certain testimony directly related to the employer’s opportunity to respond.
 

 Of critical importance was Craven’s testimony regarding her conversation with Lewis in September 2008. According to Craven, she informed Lewis at that time of her harasser’s identity and showed him a picture the harasser had sent her of his genitals. Craven testified Lewis told her not to tell anyone of the harassment. This conversation may be integral to determining whether Craven gave the employer a reasonable opportunity to address her claims. If it is true that the conversation occurred and that Lewis told Craven to remain quiet, this might explain why she waited a full year — until September 2009— before bringing a formal complaint. The purpose of this alleged conversation is also important. If Craven went to Lewis in an attempt to report harassment and obtain relief, it may have impacted the employer’s responsibility to take action a full year before an investigation actually commenced. The question of responsibility would hinge on the context of the conversation, specifically Craven’s intent in discussing the matter.
 

 Unfortunately, the referee made no fact findings regarding this conversation. His order fails to even mention Lewis. Without such findings, it is difficult to understand how the referee could conclude that Craven’s actions were unreasonable. For this reason, further fact findings must be made regarding Craven’s conversation with Lewis. These findings should discuss whether the conversation occurred, and, if so, Craven’s intent for broaching the sub
 
 *654
 
 ject, Lewis’ response, and what effect, if any, it had upon the employer’s duties.
 

 Further fact finding may be required regarding the offer of reemployment
 

 Once the UAC conducts further fact finding concerning Craven’s conversation with Lewis, it may still conclude she is ineligible for benefits. However, in the event that such further findings convince the UAC otherwise, it will have to address what effect, if any, .Craven’s refusal of the offer for re-employment had upon her claim for benefits. This was yet another area not mentioned in the referee’s order.
 

 Craven’s decision to refuse the offer of re-employment could affect the dates of her eligibility for unemployment benefits, if such benefits are awarded. At the hearing, Craven testified she quit on September 24, 2009. She stated that although the employer extended an offer of re-employment on October 27, 2009, she declined for health-related reasons. Section 443.101(2), Florida Statutes (2009), states that if the Agency for Workforce Innovation finds an applicant for benefits “has failed without good cause to [] accept suitable work when offered to him or her,” the applicant will be disqualified from receiving unemployment benefits from that point on.
 
 [4]
 
 “Suitable work,” for the purpose of the statute, requires the Agency to consider such factors as the degree of risk to the employee’s health and safety, as well as the employee’s physical fitness.
 
 [5]
 

 Here, Craven claimed the offer of reemployment was not “suitable” as it could have caused stress which would complicate her pregnancy. If Craven is correct, she would continue to be entitled to benefits after the date of the offer; however, if she is incorrect, her eligibility for unemployment benefits would cease on the date that she rejected the offer. Therefore, should the UAC find Craven eligible for unemployment benefits upon remand, it must conduct additional fact finding to discern if the position offered was “suitable” for her.
 

 Conclusion
 

 This appeal demonstrates the need for the UAC to demand accurate, specific fact findings from its referees. Even a cursory examination of the record shows the insufficiency of several of the referee’s findings, as well as the need for additional findings to reach his conclusion. We remind the UAC of the need to carefully review the referee’s findings, and not to sacrifice thoroughness for the sake of expediency. For these reasons, we REVERSE and REMAND for further fact findings consistent with this opinion.
 

 WOLF and MARSTILLER, JJ., concur.
 

 [1]
 

 . Molander testified that because Craven refused to identify the harasser or file a formal complaint, the employer could do nothing at that time except have each employee resign a
 
 *652
 
 copy of the station's sexual harassment policy, which they did in July 2008.
 

 [2]
 

 .
 
 See Tallahassee Primary Care Assocs. v. Fla. Unemployment Appeals Com'n,
 
 930 So.2d 824, 825 (Fla. 1st DCA 2006).
 

 [3]
 

 .
 
 Id.
 
 at 826;
 
 see also Howell & O'Neal v. Fla. Unemployment Appeals Com'n,
 
 934 So.2d 570, 575 (Fla. 1st DCA 2006).
 

 [4]
 

 .
 
 See Gibbs v. Fla. Dep't of Commerce,
 
 368 So.2d 651, 652 (Fla.1979) (finding a claimant was only eligible for benefits up to the date upon which her former employer offered her a comparable job).
 

 [5]
 

 .
 
 See
 
 § 443.101(2)(a), Fla. Stat. (2009).